had taken place between plaintiff and defendant, and no replies had been sent to those letters admitted. There was no question of notice or demand, nor anything to explain or communicate. If the plaintiff had a well-founded claim against the defendant, anything he might write could not strengthen it. If he did write anything of an approving character, it would be a self-serving declaration, and clearly inadmissible. And it happens that he did so write, for in the first letter were the words, "Please find enclosed bill for sale of car as per our agreement,". etc., and in the second letter was contained this paragraph:

"In regards to sale, I wish to state that I had spent a number of days in this party's company looking around, and at quite an expense. This outside of the use of an automobile like when we called upon you. * * * I had figured on this deal pulling off for some little time back."

When it is considered that some men in the jury box look upon anything in writing or print with an almost superstitious regard, and fail to differentiate what a man may write in his own interest from what he may write against, it may be safely concluded that the admission of such letters was pregnant with harm and prejudice to .the defendant; and the law says that they were not evidence. Learned v. Tillotson, 97 N. Y. 1, 49 Am. Rep. 508, Gray v. Kaufman Dairy Co., 162 N. Y. 388, 56 N. E. 903, 49 L. R. A. 580, 76 Am. St. Rep. 327, and Gherky v. State Line Tel. Co., 122 App. Div. 879, 107 N. Y. Supp. 420, on the consequent injury.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.

---

FORTON v. CROSSTOWN ST. RY. CO.

(Supreme Court, Trial Term, Erie County. April, 1909.)

1. MASTER AND SERVANT (§ 289*)—PERSONAL INJURIES—QUESTIONS FOR JURY.
Where a motorman claimed that because of lack of proper hangers between his vestibule and the car proper the light prevented him from seeing, and he ran the car into a wagon and was injured, the question of whether he was negligent in not leaving the window ahead of him open wider than 2½ inches, so he could better look ahead, was for the jury.
[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 289.*]

2. MASTER AND SERVANT (§ 250½*) — PERSONAL INJURIES — EVIDENCE—PRIMA FACIE CASE—STATUTE.
Laws 1906, p. 1682, c: 657, amending Laws 1890, p. 1082, c. 565, known as the "Railroad Law," by adding section 42a, providing that, in any action by an employé against a railroad corporation for injuries, proof of presence of defects shall be prima facie evidence of negligence, is to be interpreted as part of the general railroad law, and as such is applicable to street railroads.
[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 250½.*]

Action by Arthur E. Forton against the Crosstown Street Railway Company. Verdict for plaintiff, and defendant moves for new trial on the court's minutes. Motion denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John T. Ryan, for plaintiff.
Dana L. Spring, for defendant.

WHEELER, J.   The plaintiff recovered a verdict in this action for injuries received by him while acting as motorman on one of the defendant's electric cars.   The accident happened on a stormy, rainy night.   The plaintiff claims that, owing to the absence of proper hangers, he was unable to hang a curtain at the window of the car which was between the vestibule in which he stood and that part of the car used by passengers; that owing to the absence of this curtain the vestibule was flooded with light and prevented him from seeing ahead of the car into the darkness any considerable distance, which he otherwise would have been able to do, had the curtain been in place.   Under these circumstances, he ran his car into an oil tank wagon moving on the track ahead of him with sufficient force to break the vestibule and more or less seriously injure himself.

The court hesitated on the trial as to whether the evidence of the defendant's alleged negligence was sufficient to warrant the submission of the case to the jury.   It also entertained doubts as to whether, from the plaintiff's own testimony, he was not chargeable with contributory negligence under the circumstances in not leaving the window of the vestibule ahead of him fully open, so he could better look ahead; it appearing that the glass was covered by rain and the opening actually left by him was only 2½ inches wide.   After careful consideration of all the facts, while the mind of the court still entertains doubts as to the correctness of the verdict, nevertheless the questions of fact involved were properly submitted to the jury for their determination.

Upon the submission of the case to the jury, the court was requested by plaintiff's counsel to charge, and did charge, in the language of chapter 657, p. 1682, of the Laws of 1906, that the absence of the curtain complained of was prima facie evidence of negligence on the part of the defendant.   It is claimed this was error, and that the provisions of this chapter have no application to street electric railways, such as the defendant operated in this case.   We are not prepared to say that the charge in this respect is not correct, independent of the statute.   But we do not rest our decision on that ground, but on the ground that the statute in question applies to street surface railroads, as well as to other railroads.   The statute reads:

"Section 1. Chapter 565 of the Laws of 1890, entitled 'An act in relation to railroads, constituting chapter thirty-nine of the General Laws, and known as the railroad law,' is hereby amended by adding thereto a new section, to be known as section 42a, as follows:

" 'Sec. 42a. In all actions against a railroad corporation, foreign or domestic, doing business in this state, or against a receiver thereof, for personal injury to, or death resulting from personal injury to any person, while in the employment of such corporation or receiver, arising from the negligence of such corporation or receiver or of any of its or his officers or employés, every employé or his legal representatives, shall have the same rights and remedies for an injury, or for death, suffered by him, from the act or omission of such corporation or receiver or of its or his officers or employés, as are now allowed by law, and, in addition to the liability now existing by law, it shall be held in such actions that the persons engaged in the service of any railroad cor-

poration, foreign or domestic, doing business in this state, or in the service of a receiver thereof, who are entrusted by such corporation or receiver, with the authority of superintendence, control or command of other persons in the employment of such corporation or receiver, or with the authority to direct or control any other employé in the performance of the duty of such employé, or who have, as a part of their duty, for the time being, physical control or direction of the movement of a signal, switch, locomotive engine, car, train or telegraph office, are vice principals of such corporation or receiver, and are not fellow servants of such injured or deceased employé. If an employé engaged in the service of any such railroad corporation, or of a receiver thereof, shall receive any injury by reason of any defect in the condition of the ways, works, machinery, plant, tools or implements, or of any car, train, locomotive or attachment thereto belonging, owned or operated, or being run and operated by such corporation or receiver, when such defect could have been discovered by such corporation or receiver, by reasonable and proper care, tests or inspection, such corporation or receiver shall be deemed to have had knowledge of such defect before and at the time such injury is sustained; and when the fact of such defect shall be proved upon the trial of any action in the courts of this state, brought by such employé or his legal representatives, against any such railroad corporation or receiver, on account of such injuries so received, the same shall be prima facie evidence of negligence on the part of such corporation or receiver. This section shall not affect actions or causes of action now existing; and no contract, receipt, rule or regulation, between an employé and a railroad corporation or receiver, shall exempt or limit the liability of such corporation or receiver from the provisions of this section.'

"Sec. 2. This act shall take effect immediately."

We are not aware of any decision of the courts of this state passing on the question here raised. In other states there are decisions holding that statutes substantially like the one under consideration apply only to steam roads. Such are the cases of Funk v. St. Paul City R. Co., 61 Minn. 435, 63 N. W. 1099, 29 L. R. A. 208, 52 Am. St. Rep. 608; Lundquist v. Duluth St. R. Co., 65 Minn. 387, 67 N. W. 1006; Sams v. St. L. & M. R. R. Co., 174 Mo. 53, 73 S. W. 686, 61 L. R. A. 475; Stocks v. St. Louis Trans. Co., 106 Mo. App. 129, 79 S. W. 1176; Godfrey v. St. Louis Trans. Co., 107 Mo. App. 193, 81 S. W. 1230; McLeod v. Chi. & N. W. R. Co., 125 Iowa, 270, 101 N. W. 77; Riley v. Galveston C. R. Co., 13 Tex. Civ. App. 247, 35 S. W. 826.

If the statute in question were an independent enactment, standing alone by itself, we should be inclined to follow the decisions of the courts of sister states. The act in question, however, forms a part of the general railroad law. It is made an added section to that act. It is "section 42a." Street electric railway companies may incorporate under this general act. Article 2 of the railroad law (Laws 1890, p. 1082, c. 565), embracing sections 30 to 59, inclusive, relate to the "construction, operation and management" of railroad companies. Section 42 provides that:

"Any railroad corporation may employ any inhabitant of the state, of the age of twenty-one years, not addicted to the use of intoxicating liquors, as a car driver, conductor, motorman, or gripman, or in any other capacity, if fit and competent therefor. All applicants for positions as motormen or gripmen on any street surface railroad in this state shall be subjected to a thorough examination by the officers of the corporation as to their habits, physical ability and intelligence," etc.

It clearly appears, therefore, that the general railroad law is made by its very terms to apply to and deal with street surface railways, as well as to steam commercial roads. When, therefore, the Legis-

lature added a new section to the general act by way of amendment, which immediately follows the section quoted, in which it is provided that "in all actions against a railroad corporation * * * the presence of defects shall be prima facie evidence of negligence on the part of such corporation," etc., it is fair to assume that it was the intention of the Legislature to make section 42a apply to all railroads, street surface railways as well as ordinary commercial steam roads; and we so hold.

Most, if not all, of the cases of other states above cited, may be distinguished from the case at bar. In the case of Funk v. St. Paul City R. Co., 61 Minn. 435, 63 N. W. 1099, 29 L. R. A. 208, 52 Am. St. Rep. 608, the employer's liability act of Minnesota (chapter 13, p. 69, Gen. Laws 1887) provides that:

"Every railroad corporation owning and operating a railroad * * * shall be liable for damages sustained by an agent or servant by reason of negligence of any other agent or servant," etc.

It was held not applicable to a street (cable) railroad corporation; the court (Buck, J.) saying that, as there were no cable or electric railroads in the state of Minnesota when the law was passed, the Legislature could not have intended to apply the law to such corporations, although the opinion goes further, and argues that the law should not apply to street railroads anyway, because street cars are more readily managed and controlled than long steam railroad trains, carry no freight, etc., and are operated with less hazard and danger of personal injury, etc. Lundquist v. Duluth St. R. Co., 65 Minn. 387, 67 N. W. 1006, follows the Funk Case.

Sams v. St. Louis & M. R. R. R. Co., 174 Mo. 53, 73 S. W. 686, 61 L. R. A. 475; Act Mo. Feb. 9, 1897 (Laws 1897, p. 96; section 2873, Rev. St. 1899 [Ann. St. 1906, p. 1655]), provides:

"That every railroad corporation owning or operating a railroad in this state shall be liable for all damages sustained by any agent or servant thereof while engaged in the work of operating such railroad by reason of the negligence of any other agent or servant thereof," etc.

This is article 2, c. 12, Rev. St. 1899, and is followed immediately by article 3, which relates to street railroads. The court, in the prevailing opinion, says (page 79 of 174 Mo., page 693 of 73 S. W., and page 482 of 61 L. R. A.):

"Running through all our statutes on the subject there is an obvious distinction shown between railroads and street railroads. No one can read article 2 of chapter 12, Rev. St. 1899, and gather the idea that it has any reference to street railroads. Then follows article 3, which relates to street railroads only."

Gantt, J., dissenting, argues ably that the act covers street as well as steam railroads, citing many cases in different states, and referring to the fact that the Minnesota statute, cited in the prevailing opinion, was passed before the operation of cable or electric railroads in that state.

McLeod v. C. & N. W. Ry. Co., 125 Iowa, 270, 101 N. W. 77: This case holds that Code, § 2071 (Employer's Liability Act), which applies in terms to "every corporation operating a railway," in its

broadest and most general sense, is sufficient to include a street railway corporation. Still in ordinary parlance the word "railway" or "railroad" has special reference to the larger, more expensive, and more permanent lines or systems extending from town to town, accommodating a heavier and more miscellaneous traffic, and requiring larger forces of employés, who are exposed to greater risks than is the case with street car lines. Street railway corporations in Iowa seem to come under separate statutes or sections of the Code. See sections 2051, 2075, and 2122. The latter section is the first section of "chapter 7, of the Regulation of Carriers by Railway," and reads as follows:

"Sec. 2122. To What Applicable.—The provisions of this chapter shall apply to the transportation of passengers and property, and to the receiving, delivering, storing and handling of property wholly within this state, and shall apply to all railroad corporations, express companies, sleeping car companies, freight or freight line companies, and to any common carrier engaged in this state in the transportation of passengers or property by railroad therein. * * * The term 'railroad' and 'railway' as used in this chapter shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any corporation, receiver, trustee or other person operating a railroad, whether owned or operated under contract, agreement, lease or otherwise; and the term 'transportation' shall include all instrumentalities of shipment or carriage; and the term 'railway corporation' shall mean all corporations, companies or individuals owning or operating any railroad in whole or in part in this state, and the provisions of this chapter shall apply to all persons, firms, and companies, and to all associations of persons, whether incorporated or otherwise. that shall do business as common carriers upon any of the lines of railway in this state, street railways excepted, the same as to railroad corporations herein mentioned."

As bearing upon this idea, notice that the act creating the State Board of Railroad Commissioners (section 2112) provides that:

Said board "shall have general supervision of all railroads in the state operated by steam * * * and any common carrier engaged in the transportation of passengers or freight by railroad, street railroads excepted," etc.

In view, therefore, of the relation which section 42a of the general railroad law sustains to the other sections of the act, and in view of the distinctions which are possible in the statutes of sister states, we are of the opinion that the section in question must be held to apply to street surface railroads.

This leads to the conclusion that the charge excepted to was correct, and the motion for a new trial is denied.

So ordered.